**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **JAMES HOUCK, #421-024, 1474477** | * |
| **Plaintiff,** | * |
| v | *   Civil Action No. GJH-18-83 |
| **WARDEN, WCI** | * |
| **CASE MANAGER,** | |
| **JOEY POINDEXTER[1],** | * |
| **CHIEF SECURITY** | |
| | * |
| **Defendants.** | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

James Houck is incarcerated at Western Correctional Institution ("WCI") in Cumberland, Maryland. Houck filed this Complaint, ECF No. 1, with a Motion for Leave to Proceed In Forma Pauperis on January 4, 2018. ECF No. 2. The Court will grant Houck's Motion for Leave to Proceed In Forma Pauperis, ECF No. 2, because it indicates that he is indigent.

Houck claims that he is unsafe in the general prison population at WCI because of an August 17, 2017 incident with his then cellmate Joey Poindexter, ECF No. 9,[2] and because he was allegedly improperly reassigned from protective custody ("PC") to the general prison population at WCI where he has enemies who pose threats of serious harm to him, ECF No. 1.[3]

---

[1] The Clerk shall correct the spelling of Joey Poindexter's name on the docket.
[2] Houck does not allege Poindexter acted under color of state law in the matters at issue. A civil rights complaint, filed under 42 U.S.C. § 1983, may only lie against those acting under color of state law. This is a threshold requirement. *See Wyatt v. Cole*, 501 U.S. 158, 161 (1992); *West v. Atkins*, 487 U.S. 42, 49 (1988). Thus, the Court will dismiss Poindexter from this case.
[3] Houck has not raised a failure to protect claim based on the August 17, 2017 incident, but he may do so in a separate proceeding. This action addresses only his claim that he has been unsafe in the general prison population since the August 17, 2017 incident.

Houck asks to be housed in a single cell in PC or transferred to another correctional facility and awarded damages. ECF No. 1 at 5.[4]

Pending before the Court are Houck's Motion for Summary Judgment, ECF No. 14, and the Division of Correction's Motion for Summary Judgment, ECF No. 10.[5] Also pending before the Court are Houck's self-styled "Motion for Settlement and Transfer to a New Facility," ECF No. 25, "Motion for Settlement for Money Judgment," ECF No. 26, and numerous "supplements" and correspondence filed by Houck, *see e.g.* ECF Nos. 5, 6, 7, 12, 15, 16, 22, 24, 27, 28, 29.[6] No hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the following reasons, Houck's Motion for Summary Judgment, Motion for Settlement and Transfer to a New Facility and Motion for Settlement for Money Judgment are denied, and summary judgment is granted in favor of Defendants.

## I. BACKGROUND[7]

### A. Factual background

At a November 20, 2013 hearing, the Honorable Michael J. Algeo of the Circuit Court of Montgomery County sentenced Houck and recommended "that the Department of Corrections take whatever steps are necessary to house [Houck] in a secure and safe environment" because Houck had testified against two individuals—Trenton Robinson and Corey Yates—in a separate criminal case. ECF No. 10-4 at 7, 8, 19, 41–42. Besides Corey Yates and Trenton Robinson,

---

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.
[5] On January 29, 2018, the Court directed counsel for the Division of Correction ("DOC") to file an expedited response to Houck's allegations of imminent danger. ECF No. 3. The Response was filed on February 26, 2018, with declarations and verified exhibits, ECF No. 10, and the Court notified Houck of its intention to treat the Response as a Motion for Summary Judgment, ECF No. 13 at 1.
[6] Houck is a frequent *pro se* litigator in this court. In 2017 alone, Houck filed five complaints and three petitions for writs of habeas corpus. *See Houck v. Western Correctional Institution*, GJH-17-2801 (D. Md.). His other proceedings—Civil Action Nos. GJH-17-280J, GJH-17-3182, GJH-17-3183, and GJH-17-3184—will remain "administratively closed until such time as the number of active cases Houck has pending before this Court is reduced to zero" per the Court's November 28, 2017 ECF No. 3 order in those cases.
[7] The facts relied on here are either undisputed or viewed in the light most favorable to Houck, the non-moving party. Houck, however, did not submit any declarations or verified exhibits with his pleadings and other filings.

Houck has two other documented "enemies": Tyree Edge and Dayvon Irving. ECF No. 10-1 ¶ 8; *see also* ECF No. 10-1 at 6; ECF No. 10-4 at 4, 7–8. Houck alleges that these individuals pose threats of serious harm to him and that they reside in the WCI general prison population, ECF No. 15 at 3 and ECF No. 17 at 1, however none of these four documented "enemies" is incarcerated in WCI's general population. ECF No. 10-1 ¶ 8. Houck also alleges that the following individuals should be on his "enemies list" because they pose threats of serious harm to him: Joey Poindexter, Robert Crowder, Thomas Robinson, Jordan Kamara. ECF No. 1 at 3–4. Poindexter, Houck's former cellmate, is now housed in PC at WCI in a housing unit separate from the one where Houck is located. ECF No. 10-1 ¶ 8. Kamara, Crowder, Robinson and Watkins are not housed at WCI. ECF No. 10-1 ¶ 8.

On August 17, 2017, Houck was placed on PC administrative segregation after a fight with his cellmate, Joey Poindexter. Walker Decl. ECF No. 10-1 ¶ 4. Houck's description of this incident changed several times; first he told WCI's Correctional Case Management Supervisor, Corey Walker, that he had an argument with Poindexter, then that he had a physical altercation with Poindexter, and finally, that he had a claim under the Prison Rape Elimination Act (PREA). ECF No. 10-1 ¶ 4.

Detective Sergeant R. Shifflet of the Internal Investigation Division (IID) investigated Houck's claims, ultimately found them unsubstantiated, and closed the case on January 22, 2018. ECF No. 10-1 ¶ 4. Shifflet found that on August 17, 2017, Sergeant J. White heard banging in cell 5B09. White went to the cell where he found Houck unconscious and Poindexter standing at the back of the cell. ECF No. 10-2 at 25. Prison medical staff arrived, placed Houck in a neck stabilization collar, and took him to the medical unit on a stretcher. ECF No. *Id.* at 27–38. Houck was given oxygen and awoke within 2-3 minutes. *Id.* at 26. Houck was able to state his name,

location and DOC number. *Id.* at 26–28, 39. Houck informed Nurse Bernice Swan in the medical unit, that he had been raped repeatedly over the previous few days. *Id.* at 38. Houck was taken to the Emergency Department at Western Maryland Regional Medical Center (WMRMC) for testing per PREA protocol. *Id.* at 25. Staff sealed the cell as a crime scene pending IID investigation. ECF No. 10-2 at 27. Houck was instructed not to remove his clothes or drink until he was seen by medical staff at the hospital emergency room. *Id.* at 26, 28, 39. Detective Sergeant R. Shifflet concluded that no video evidence existed of the assault because the incident occurred inside the cell. *Id.* at 25, 27.

Debi A. Wolford, a forensic nurse, examined Houck at WMRMC. Wolford's medical notes indicate that Houck had an injury to his face and complained of right eye and right knee pain. ECF No. 10-2 at 19. Digital photographs were taken of Houck's injuries. *Id.* at 47–48. The medical notes indicate the presence of a blue pen mark and a small pin point hole on his skin at the chest and small newer abrasions on the left buttock. *Id.* at 20. Several areas of dried blood were noted at the back of Houck's undershorts. *Id.* at 5. Houck refused to give his shorts or tee shirt as evidence, explaining that they would not be returned to him if sent to the crime lab for processing. *Id.* When Wolford asked whether he was reporting a sexual assault, Houck answered "I was choked out but yea, when I came to my pants were down so yea." *Id.* at 19. Houck added "I woke up on the floor with officer [sic] around me over me. I was out of breath I wasn't functioning seems like I was going to die my pants were down my drawers were up." *Id.* Houck told her that "on August 6 and August 8th Poindexter appropriated [sic] me about sexual harassment" and threatened to kill him. *Id.* Houck consented to a sexual assault examination. *Id.* at 19, 22. Houck returned to WCI later that day, placed in the infirmary, and assigned administrative segregation status. ECF No. 10-2 at 25.

4

On August 17, 2017, Shifflet individually interviewed Houck and Poindexter. Houck told Shifflet that he was not sure what had happened to him because he passed out during the incident. ECF No. 10-2 at 5. Houck denied being in pain. *Id.* Shiflett observed a pen mark on Houck's shirt and small red mark on his chest. *Id.* Houck alleged Poindexter had been asking him for sex all week. *Id.* Houck said Poindexter attacked him because he had confronted Poindexter about being in his locker. *Id.* Shifflet asked Inmate Houck whether he had been sexually assaulted, and Houck answered yes, but then stated he wasn't sure because he was unconscious. *Id.* Houck stated that he woke up with staff all around him rendering aid and that he realized his pants were down a little bit but his underwear was up. *Id.* Houck said he wanted Poindexter criminally charged for the sexual advances. *Id.* Shifflet told Houck that unless Poindexter admitted guilt the case would be closed. *Id.* Houck stated he understood that but at least it would be documented to possibly help get him transferred out of Cumberland. *Id.* Houck declined to provide a written statement. *Id.* at 44.

Poindexter told Shifflet that he was defending himself after Houck had attacked him. ECF No. 10-2 at 5, 6, 43. Poindexter said "Houck had been acting crazy for several days by making threats and calling him vulgar names." *Id.* at 5. According to Poindexter, earlier on the day of the incident, Houck had accused him of getting into his locker and threatened to kill him. *Id.* at 5, 43. Poindexter said "Houck had two weapons, one of which was an ink pen." *Id.* at 5. Houck "backed Poindexter against the back wall of the cell and then stabbed Poindexter in the right arm with the pen." *Id.* Poindexter defended himself. *Id.* Shifflet noted Poindexter's injuries on his right arm were consistent with his account of the incident. *Id.* at 5. Poindexter told Shifflet that Houck had been threatening to use PREA to get out of the facility for weeks. *Id.* at 5, 43.

5

Nurse Swan treated Poindexter for a scratch on his right arm and several superficial scratches to his right chest. ECF No. 10-2 at 28, 41. DOC placed him on administrative segregation pending IID review. *Id.* at 28. Poindexter told Swan that Houck had attacked him with a pen. Swan observed Poindexter had superficial scratches on his right arm consistent with being stabbed with a pen. *Id.* at 41. Poindexter denied trying to rape or having any sexual contact with Houck, explaining "I don't want to look at him let alone have sex with him." *Id.* Poindexter told Swan that Houck was lying about his accusations in order "to get a single cell." *Id.*

Poindexter provided a written statement on August 17, 2017, which states:

> [Houck's] transfer request to a medium security prison was denied on Friday, and since this past weekend, he has been getting in my face several times a day, looking for a fight. He started this past Saturday by blaming me for his transfer request being denied. I know it makes no sense, but in his mind, it was apparently my fault. His exact words to me were "they want to keep me here so I can kill your faggot ass."

ECF No. 10-2 at 43.[8]

On November 15, 2017, Houck's case manager informed him that he would be moved from PC to WCI general population housing. ECF No. 1 at 2. Houck lived in the general prison population at WCI without incident between December 1, 2017 and February 6, 2018. ECF No. 10-1 ¶ 5; ECF No. 10-1. On February 8, 2018, Houck was moved to administrative segregation housing pending an investigation into charges of possessing a weapon in his cell. ECF No. 10-1 ¶ 7.

After returning to the general population, Houck was again removed and placed on administrative segregation for five days on May 10, 2018 for his protection pending investigation of his claims that a prison gang, the Bloods, had ordered a "hit" on his life. ECF No. 16; Walker decl. ECF No. 20-1 ¶ 3; ECF No. 20-2 at 2–3, 4, 9. On May 16,

---

[8] Poindexter's statement appears to have been more than one page long. Only the first page was submitted for the record. ECF No. 10-2 at 43.

2018, Walker interviewed Houck about Houck's "hit" allegation. ECF No. 20-1 at 1. Houck told Walker that sometime in January of 2018, while he was temporarily housed in the WCI Medical Ward, he witnessed a staff member engage in sex with an inmate affiliated with the Bloods. *Id.* ¶ 4. The inmate, whom Houck identified as "Pops," warned him not to tell anyone. *Id.* Houck alleges that at the beginning of May 2018, Houck's cellmate, "told him that he needs to get out of the cell and that there is a hit on him by the Bloods because he told on 'Pops.'" *Id.* ¶ 5. Houck also alleged that the cellmate is a member of the Bloods. *Id.* Walker then asked Houck if he had been threatened by anyone verbally or in writing. *Id.* Houck answered that he had not received any threats, but that he "gets stares on the compound" by inmates he knows only as "Face," "Midnight," and "Frankie Black." *Id.* During the interview, Houck asked to be placed in a different general population housing unit. *Id.* ¶ 7. His request was denied pending conclusion of the investigation into his claims. *Id.*; *see also* ECF No. 20-2 at 7, 8.

### B. Procedural background

On February 22, 2018, Houck filed a "Motion for Complaint for Relief," alleging that on August 17, 2017, his then cellmate Poindexter assaulted him. ECF No. 9. Houck asks to be transferred from WCI to Jessup Correctional Institution (JCI) or a facility in Hagerstown, Maryland where he can be in a single cell. ECF No. 9. On February 26, 2018 the Division of Correction (DOC) filed its Response with declarations and verified exhibits. ECF No. 10. The Court notified Houck of its intention to treat the Response as a Motion for Summary Judgment. ECF 13 at 1. On April 4, 2018, Houck filed a Cross-Motion for Summary Judgment, asserting that Poindexter was "supposed to be put on my enemy list but" he was not and instead "he is still housed at WCI." ECF No. 14 at 1. Houck summarily maintains that there is a "policy" that

7

enemies cannot be housed in the same prison. *Id.* He does not specify the policy to which he refers. Houck reiterated his request for damages and asked again to be moved to JCI or placed on PC. *Id.*; ECF No. 15 at 2.

In a May 4, 2018 pleading, Houck alleged that a prison gang, the Bloods, had ordered a "hit" on him; he asked the Court to award him damages, return him to protective custody, or transfer him to JCI or to the Maryland Correctional Training Center, Building 8-1-2 on protective custody in a single cell. ECF No. 16 at 1, 3–4.

On May 22, 2018, DOC filed a second Court-ordered response. ECF No. 20. The Response stated that Houck was removed from the general population on May 10, 2018, and placed on administrative segregation for his protection pending investigation of this allegation. Declaration of Corey Walker, ECF No. 21-1 ¶3.

On June 7, 2018, Houck submitted a filing titled "Motion for Settlement and Transfer to new facility." ECF No. 25. On June 8, 2018, Houck filed a "Motion for a Settlement under a Money Judgment." ECF No. 26. Houck repeated his allegations of impending harm in both motions, and asked for a monetary settlement, transfer to another correctional facility and assignment to PC. ECF No. 25, 26.

## II. DISCUSSION

Houck's Complaint and supplemental filings do not specifically allege Defendants violated his constitutional rights or federal law. To the extent Houck seeks to bring an Eighth Amendment claim of failure to protect from violence, by returning him to the general prison population after November of 2017, he must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. S*ee Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987).

Ordinarily, placing an inmate in a cell with another inmate does not violate the Eighth Amendment. *See Rhodes v. Chapman*, 452 U.S. 337, 347-50 (1981). "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see also Sandin v. Conner,* 515 U.S. 472 (1995) (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest). An inmate has no constitutional right to be confined to a particular institution, *Meachum*, 427 U.S. at 223, nor any "justifiable expectation" that he will be confined in a particular prison. *Olim v. Waukinekona,* 461 U.S. 238, 245 (1983). Further, matters of security classification are reserved to the sole discretion of prison officials. *See Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir.1994). The "constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement ... is within the sentence imposed ... and is not otherwise violative of the Constitution.'" *Id.*

Further, "not every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). A failure to protect claim must satisfy an objective and subjective standard. Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk to either injury. *Danser v. Stansberry*, 772 F.3d 340, 346-47 (4th Cir. 2014). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S 825, 837 (1994). "[T]he official must both be aware of facts

9

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.; see also Rich v. Bruce*, 129 F.3d 336, 339–40 (4th Cir. 1997).

The verified exhibits and declarations in the record show that after the April 17, 2017 altercation, the IID promptly investigated Houck's PREA claim. ECF No. 10-2 at 25. Houck, in his own statements, acknowledged he was unsure whether a sexual assault had occurred. ECF No. 10-2 at 5. And after interviewing both Houck and Poindexter and reviewing the medical records and correctional staff reports, the investigator was unable to substantiate that a sexual assault had occurred. ECF No. 10-1 ¶ 4. The record also indicates that Houck is not housed in the same facility as any of his verified enemies, and since the August 17, 2017 incident Houck is housed away from Poindexter. ECF No. 10-1 ¶ 8. Other than Poindexter, none of the individuals Houck names as enemies in his Complaint is housed at WCI. *Id.* Joey Poindexter is in Protective Custody and segregated from Houck. *Id.*

After Houck claimed there was a "hit" on him, he was placed on administrative segregation pending an investigation during which he admitted that he received no verbal or written threats. ECF No. 10-1 ¶ 7. Further, Houck does not dispute the declarations or exhibits filed with the two expedited Responses in answer to his Complaint. In light of these circumstances, the Court finds Houck does not demonstrate he is in danger of imminent serious harm if not assigned to a single cell in protective custody in one of the correctional facilities of his choice.

Houck's ever-changing requests for new housing are puzzling and even contradict his stated concerns about his safety. He asks the Court to order him assigned to a single cell in PC or transferred to an out-of-state institution, to JCI without distinction as to his housing status there and without the condition that none of his alleged "enemies" is housed at JCI, or to WCI HU

(housing unit) 1 or 4. ECF No. 1 at 2, 3, 5; ECF No. 5 at 2; ECF No. 7 at 2; ECF No. 6 at 2. On February 9, 2018, Houck asked to be housed at WCI in HU 1, 2, 3 (in tier B), 4 (in tier C), or 5. Houck also asked to be placed in "Hagerstown in a single cell alone" or WCI "in a single cell alone and he has modified his request as to JCI for "as single cell alone." ECF No. 9 at 2–3. Houck, therefore, appears ready to accept remaining in the general population "as long as he has a 'single cell alone'" regardless of where those on his "enemies" list reside. ECF No. 10 at 1–2. The varied and ever-changing nature of his reassignment requests undercuts his assertion that he needs to be transferred because of safety concerns.

In this context, Houck's Cross-Motion for Summary judgment will be denied. The DOC response, treated as a Motion for Summary Judgment will be granted. Houck's miscellaneous motions, which essentially repeat his claims that he is in danger unless placed in a particular housing status, will be denied for the above discussed reasons.

### III. CONCLUSION

Accordingly, the Court will grant the DOC's Motion for Summary Judgment and deny Houck's Motion for Summary Judgment, "Motion for Settlement and Transfer to a New Facility" and "Motion for Settlement for Money Judgment." A separate Order follows.

Dated: September 11, 2018                    /s/
                                             GEORGE J. HAZEL
                                             United States District Judge